McKinney, J.
delivered the opinion of the court.
It appears that on the 9th day of December, 1837, Smith bargained with Anthony for the purchase of a tract of land in Rutherford county, at the price of five thousand dollars, of which the sum of twenty-four hundred dollars was paid at the time of the purchase; and for the balance, Smith executed three bills single, each for eight hundred and sixty-seven dollars, payable, respectively, on the 25th day of December, in the years 1838, 1839, and 1840. And Anthony executed a title bond, by which he covenanted to make a good and lawful deed to Smith for said tract of land, on or before the 25th day of December, 1841, or when said three bills single should be fully paid and discharged.
On the 24th day of March, 1838, an agreement was entered into between said parties, by which said bills single were surrendered up to Smith; and, in their stead, Anthony accepted a note, held by Smith, on a certain John Harrison and other joint makers, for the sum of twenty-five hundred dollars, on which was endorsed a credit for three hundred and fifty-seven dollars and fourteen cents, payable, to said Smith, or Thomas Rucker, jr., and due the 1st of January, 1840. •./
The makers of said note, except one, were inhabitants, at the time, of the State of Alabama. And pursuant to said agreement, Smith endorsed said note to Anthony, with an express waiver -of demand and notice; the latter, however, agreeing not to hold Smith “ responsible for the *510 said note until he had fully tested the solvency of the drawers by due process of law.”
It further appears, that after said note fell due, Anthony, who had previously removed from Rutherford county to the State of Indiana, placed the same in the hands of Smith, who accepted an agency to collect, and put the same in the hands of an attorney for collection; which agency he accepted as a matter of favor to Smith, as stated in his receipt.
Some nine months after the acceptance of such agency, Smith'procured said note, to be placed in the hands of an attorney in Alabama, for collection; and this delay is unaccounted for. Suit was instituted upon the note, but the plaintiff, Anthony, being a non-resident, notice was served upon the attorney, according to the practice in Alabama, that if security for costs were not given within sixty days, the suit would be dismissed. Information of this requirement was communicated to Smith, who took no effectual step to give the security, and the suit was accordingly dismissed. It appears that another suit was afterwards commenced upon said note in the Federal Court at Huntsville, by the procurement of Smith, as is plainly inferable from the correspondence of Anthony and the deposition of Thomas Rucker, set forth in the record. But what was the result of that suit, does not certainly appear; though it is rendered highly probable, to say the least, that at the time of the institution of the suit, if not previously, all the makers of the note were either insolvent, or had absconded ; by reason whereof the debt has been lost.
Upon this state of facts, Smith brought his bill for a specific execution of the contract to convey; and Anthony filed a cross bill, to subject the land to the satisfaction of *511 the unpaid purchase money, and ■ two other judgments recovered against Smith, on other accounts. As to said judgments relief is claimed upon the' ground that the party had exhausted his legal remedy, and that Smith had no property out of which satisfaction could be had, except his equitable interest in said tract of land.
The counsel for Smith, in the argument here, has put the case upon the ground, that the acceptance by Anthony of the note on Harrison and others, and his failure to use proper diligence to enforce payment from them, amount to a waiver and extinguishment of his equitable lien ; and this seems to have been also the opinion of the Chancellor.
There is a most important distinction between the equitable lien which the law gives a vendor, to secure 4he ‘purchase money, where the legal title has been conveyed, and that security which he provides for himself by the preservation of the legal title until the purchase money is paid. In the former case, he has parted with both the legal and equitable estate ; in the latter, he remains clothed with the legal title, which the law will intend to have been retained as an absolute security for. the purchase money. In the case of Graham vs. McCampbell, Meigs’ Rep., 52, 56, a vendor, retaining the legal title, is placed upon the footing of a mortgagee who has taken a mortgage as security for the purchase money; and the analogy is certainly correct. The legal title is alike held, in both cases, as a security for the debt, and this being so, it follows, that a vendor retaining the legal title, stands upon very different ground from one who has parted with it; and who has nothing but a bare right which possesses no operative force or effect until declared by the decree of- a court of chancery, in the particular case. In the former case, the operation of the waiver of *512 the lien cannot arise. .The security of the vendor, in such ^ase, cannot be defeated by any thing short of whaigwould e regarded as sufficient to defeat or extinguish the security of a mortgagee.
The only question, therefore, in this case is, whether the substitution of the note on Harrison and others, for the bills single, originally given for the balance of the purchase money,” can be regarded, in law, as a payment or extinguishment of the debt. That it cannot be so considered is most clear. .Smith’s liability was not discharged by the substitution; he still stood bound for the debt, in case of the insolvency of the makers, or their failure to pay, upon due diligence being used to collect the money from them. And there is no pretence in this case to insist upon Smith’s discharge, upon the ground of Anthony’s’ failure to pursue his remedy against the makers. If the debt were lost by negligence, that negligence is to be alone imputed to Smith.,/ As a mere gratuitous agent, having-accepted and entered upon the duties of the agency, he was bound to have used such diligence as became a prudent man in reference to his own -interests; and if he failed in this, he would be responsible. He will not, therefore, be permitted to throw upon his principal a loss occasioned by his own neglect, or violation of duty.
If, however, this case rested upon the ground on which the counsel of Smith has sought to place it, the result would be the same; because there is not only a total absence of proof on the part of Smith to show a waiver of the lien; but on the contrary, all the circumstances of the case, and more especially, the continued reservation of the title, after the surrender of the original evidences of debt, and the continued liability of Smith as endorser of *513 the note given in exchange, manifest a clear intention that the lien should be retained.
We think, therefore, that in every aspect of the case, the decree of the Chancellor is erroneous, and the same will be reversed ; and a decree will be here made in favor of Anthony for the amount due upon the note for twenty-five hundred dollars, allowing the credit endorsed thereon, together with interest from the maturity of the note ; and likewise for the amount of the two judgments, with interest.